## Case No. 12,601.

SECOMBE v. MILWAUKEE & ST. P. RY. CO.

[2 Dill. 469.] [1]

Circuit Court, D. Minnesota. 1873.[2]

RAILROADS — CORPORATE SUCCESSION — EMINENT DOMAIN—RIGHT OF WAY.

1. Under the legislation of the state, the Milwaukee & St. Paul Railway Company is the lawful successor of the rights of way obtained by its predecessor, the Minnesota Central Railway Company.

2. The proceedings on behalf of the railroad company to obtain the right of way over the lot in question examined; and it was *held* that they were sufficient to divest the title of the owner, upon the payment into court for him of the amount of compensation awarded for the property taken.

This action is brought to recover possession of lot 10, block 42, in the city of Minneapolis. Ovid Pinney and Hiram Osborne, it is conceded, were the owners in fee of the lot, August 19th, 1863. On August 9th, 1866, Pinney conveyed his interest, which was one-sixteenth, to Stewart, and on February 19th, 1870, Stewart conveyed to plaintiff. On February 15th, 1870, Osborne and wife by their attorney in fact conveyed their interest, fifteen-sixteenths, to plaintiff, so that he became the owner of all the interest Pinney held in the lot August 9th, 1866, and all that Osborne held July 15th, 1870. The defendant claims title as the successor to the rights and franchises of the Minnesota Central Railway Company. The latter company obtained all its corporate powers by the acts of the legislature of the state of Minnesota, passed March 8th, 1861, March 10th, 1862, and February 1st, 1864, and by virtue of these acts became vested with all the rights, powers and franchises of the Minneapolis & Cedar Valley Railroad Company. The Minneapolis, Faribault & Cedar Valley Railroad Company, the immediate successor of the Minneapolis & Cedar Valley Company, commenced proceedings, under the charter of the latter company, passed March 1st, 1856, to obtain the right of way for its railroad over lot 10, and a final judgment of condemnation in behalf of the Minnesota Central Railway, its successor, was entered December 22d, 1868, under the 20th and 22d

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 23 Wall. (90 U. S.) 108.]

sections of the act of February 1st, 1864. The amount of damages awarded was paid on that day, and it became, as it is claimed, entitled to the exclusive use, control, possession, and absolute title to this lot, which by proper instruments of conveyance, passed to the defendant.

Mr. Secombe, plaintiff, in person.

F. R. E. Cornell, for defendant.

Before DILLON, Circuit Judge, and NELSON, District Judge.

NELSON, District Judge. It is urged against the validity of the defendant's title: First. That the Minnesota Central Railway Company, in whose favor the judgment of condemnation was entered, was not a corporation. Second. That all of the proceedings taken to obtain the title to the lot were void.

The first point came before the supreme court of the state of Minnesota in the case of First Division St. P. & P. R. Co. v. Parcher, 14 Minn. 297 (Gil. 224). And it was expressly settled by the court in that case that the act creating the St. Paul & Pacific Railroad Company a corporation, and vesting it with all the rights and franchises of the Pacific Railroad Company, which had become forfeited to the state, was not in violation of section 2, art. 10, of the constitution. The act of February 1st, 1864, comes clearly within the reasoning of the court in that case, and created the Minnesota Central Railway Company a corporation by virtue thereof.

In regard to the second proposition, many points are urged against the judgment of condemnation, which, in our opinion, although they might be proper subjects for the consideration of the legislature, cannot affect its validity.

It is necessary to a proper understanding of the position of the defendant to give a history of the proceedings which resulted in the judgment of condemnation.

The Minneapolis, Faribault & Cedar Valley Railroad Company, by act of March 10th, 1862, succeeded to all the rights of the Minneapolis & Cedar Valley Railroad Company, and on the 19th day of August, 1863, commenced proceedings under the charter of the latter company, passed March 1st, 1856, to condemn the lot in controversy. Section 10 of this act requires in substance that the company should give thirty days notice of an application to the judge of the district court of the state for the appointment of three commissioners to appraise the damages for right of way, by publishing the same in a newspaper in the county through which the road runs, and after the appointment of the commissioners it should be their duty "to cause ten days' notice of their meeting to appraise the damages of any land through which said road may run, to the owner or claimant thereof." Provided, that "the no-

tice * * shall be in writing, and delivered to the owner or owners; * * or, if non-residents, then said notice shall be published in the nearest newspaper to where said land is situated, at least four weeks before making said appraisement."

The necessary steps were taken by the company, commencing by the publication of a notice on the day aforesaid, that application would be made to the judge of the district court of Hennepin county, October 26th, 1863, for the appointment of three commissioners. They were appointed by the judge on that day, and gave the required notice of their meeting on December 2d, 1863, to appraise the damages, personally, upon Pinney more than ten days before their meeting, and upon Osborne, who was not found by the person authorized to serve the notices, by publication of the same for a period of four weeks in a newspaper printed in Minneapolis. The commissioners met December 2d, 1863. Pending these proceedings, and before the commissioners had made and filed their award, the act of February 1st, 1864, was passed, changing the name of the company to that of the Minnesota Central Railway Company, and provided in section 22 of the same, that "the proceedings heretofore taken by said company for the appointment of commissioners to assess damages for lands taken by said company, and the proceedings of such commissioners are hereby confirmed, and all proceedings in all cases pending at the time of the passage of this act shall be carried on and completed in conformity with the provisions of this act, and with the same effect as is specified in this act, and all proceedings heretofore taken in any case may be filed with the clerk of the district court of the county where the lands to which they relate are situated, with the like effect."

The company, after this, perfected and completed their proceedings under section 20 of this act of February 1st, 1864. The commissioners made their report April 8th, 1864, awarding the damages, and filed it on the 16th of the same month. On July 26th, 1867, the judge ordered the money awarded to be paid into court for the benefit of the parties interested, and judgment was entered condemning the property for the use of the railroad company, and the money was paid, under this order, December 22d, 1868.

We have examined the record and the proceedings in this case, from the commencement to the final entry of judgment, and find that the company pursued the statutory provisions.

It is urged by the plaintiff that section 10 of the act of March 1st, 1856, and section 20 of the act of February 1st, 1864, when followed, can confer no right to the property sought to be taken, for the reason that no proceedings in court are contemplated by those sections, and no notice of the award when filed is to be given, and no personal

service of notice is to be made upon non-residents.

The legislature of this state was the only competent tribunal to judge of the mode and manner of exercising the right of eminent domain within the constitutional limits, and having given this company authority to obtain rights of way and depot ground, by section 10 of the act of 1856, and section 20 of the act of 1864, it is our duty only, no questions being raised as to the constitutionality of these sections, to see that the authority was not exceeded. The statute is the guide for the action of the company, and if we find that it has conformed to the provisions of the several acts laid down for its government in these proceedings, it is not our province to question the discretion exercised by the legislature.

In our opinion, the judge of the district court, who appointed the commissioners, obtained jurisdiction of the proceedings. The notices were sufficient. The necessary steps were taken to secure the attendance of claimants to the lot, at the meeting held to consider the amount of damages. The 22d section of the act of February, 1864, confirmed the proceedings previously taken. No appeal was taken from the award to the court, where there might have been a trial by jury, and it is now too late for the owners or their assigns to object.

It is true that after the order was made for judgment, and that the money be paid into court, several months elapsed before it was done; but this delay, in our opinion, does not invalidate the judgment. No action was taken to have it set aside. The award was confirmed without complaint, and the owners cannot now attack it here on that account.

The record of judgment has been completed, and the same, with a certificate by the clerk of satisfaction as against the company, has been filed with the register of deeds of Hennepin county. This record is declared by law to be evidence of title to the lands described therein, in the same manner and with like effect as deeds to real estate.

The title to this lot is perfect in the defendant, in our opinion, and judgment must be entered accordingly. Judgment accordingly.

A writ of error was sued out from the supreme court [where the judgment of this court was affirmed. 23 Wall. (90 U. S.) 108].

NOTE. As to condemnation of right of way: Eidemiller v. Wyandotte [Case No. 4.313]. Relation of new corporations to the old corporations in Minnesota, see Hopkins v. St. Paul & P. R. Co. [Id. 6,690].